UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-23980-BLOOM/Otazo-Reyes**

BIANCA DOUGLAS, *et al.*,

     Plaintiffs,

v.

CRUISE YACHT OP CO. LTD., *et al.*,

     Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Motions to Dismiss filed by Defendants Cruise Yacht Op Co. Ltd. dba the Ritz-Carlton Yacht Collection ("RCYC"), ECF No. [31]; Cynthea Bermudez ("Bermudez"), ECF No. [50]; JP Salazar ("Salazar"), ECF No. [52]; Richard Carson ("Carson"), ECF No. [53]; and Douglas Prothero ("Prothero"), ECF No. [54] (collectively, the "Motions"). Plaintiffs Bianca Douglas ("Douglas"), Pablo Martinez ("Martinez"), and Frances Milian ("Milian") (collectively, "Plaintiffs"), filed Responses, ECF Nos. [41], [74], [76], [58], [71], to which Defendants filed Replies, ECF Nos. [51], [83], [84], [75], [82]. The Court has carefully considered the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, RCYC's and Bermudez's Motions are denied; Salazar's, Carson's, and Prothero's Motions are granted in part and denied in part.

## I.    BACKGROUND

    This case involves claims of workplace discrimination and retaliation. As alleged in the First Amended Complaint ("FAC"), RCYC is a startup luxury cruise line backed by the Ritz-

Carlton brand, which employed Plaintiffs in the Reservations Office at the Miami location. ECF No. [16] ¶¶ 19-20. Douglas and Martinez were sales agents or "Yacht Vacation Consultants," and Milian was the "Sales Team Leader." *Id*. ¶ 19. Douglas is a 43-year-old black woman of Jamaican heritage, with two decades of experience as a sales agent in the cruise line industry, and with the reputation as one of the top sales agents in the industry. *Id*. ¶ 21. Martinez is a 43-year-old Hispanic man from Venezuela, with twelve years of experience as a cruise agent, who began working at RCYC in November 2019. *Id*. ¶ 22. Milian is a 50-year-old Hispanic woman from Cuba, with experience in management and consulting positions for struggling cruise lines, who began working at RCYC in August 2019. *Id*. ¶ 23.

According to Plaintiffs, Defendant subjected them to the most hostile work environment they have ever experienced. *Id*. ¶ 25. Douglas alleges that she was subjected to racial discrimination from the outset of her employment. *Id*. ¶ 31. For example, David Fredericks ("Fredericks"), the Director of Business Development and Direct of Sales, required Douglas to go through two interviews, while other non-black/Jamaican applicants only had to go through one. *Id*. ¶ 32. Fredericks also asked Douglas if she "lived in the ghetto," or said things like "you don't own a house," humiliating Douglas in front of coworkers. *Id*. ¶ 34. Fredericks also revealed Douglas's assessment scores, which he did not do for other employees. *Id*. ¶ 35. According to Douglas, she was treated less favorably than another sales agent, Mari Navarro, who was reinstated after resigning as a result of violating company policy, and who Douglas outperformed. *Id*. ¶¶ 41-44. In spite of becoming RCYC's top salesperson, Fredericks stripped Douglas's sales leads after she complained about him. *Id*. ¶ 46. According to Plaintiffs, RCYC had a pattern of using client accounts and sales leads as leverage to threaten employees it wanted to discipline or retaliate against. *Id*. ¶ 50.

Case No. 21-cv-23980-BLOOM/Otazo-Reyes

By the summer of 2020, Bermudez (RCYC's Human Resources Manager), Prothero (RCYC's Chief Executive Officer and Founder), Carson (RCYC's Director of Sales), and Fredericks did not believe that Plaintiffs and their coworkers were speaking with the dialect they wanted – instructing non-white European employees to change their accents. *Id.* ¶ 53. Carson directed Fredericks and Salazar to make changes in the way the Miami team sounded on calls. *Id.* ¶ 54. These changes included Fredericks telling Douglas "it's not '*wit* you,' it's '*with* you.'" *Id.* ¶ 55. Carson also had a meeting with the Miami team, during which he explained that RCYC was not happy with how the team sounded on calls. *Id.* ¶ 58. They wanted the Miami team to sound more "British," and conform to "European" sensibilities, and to sound more "refined, upscale, and ritzy." *Id.* ¶ 59. RCYC introduced a new call script, which was double in length to the original and included words and phrases that Martinez never used. *Id.* ¶¶ 61-62. Douglas and Martinez objected to the use of the script, and Milian supported their view that the script was discriminatory. *Id.* ¶ 66. Plaintiffs' opposition resulted in retaliation.

Martinez's leads were taken away and given to favorable agents like Navarro, and he was removed from sales. *Id.* ¶¶ 74, 79. Carson placed Milian on a development action plan. *Id.* ¶ 75. Carson instructed Milian to reprimand Douglas for an incident that did not in fact occur. *Id.* ¶ 81. The reservations department team was no longer allowed to express their concerns during team meetings. *Id.* ¶ 82.

The FAC alleges that Douglas was terminated on November 12, 2020, as a result of her race and national origin and because she complained about discriminatory practices. *Id.* ¶¶ 84, 87. Milian was terminated on November 12, 2020, because of her support for Martinez and Douglas. *Id.* ¶¶ 92-93. Martinez took FMLA leave beginning on November 24, 2020, at which time his clients also began to contact him because they were being told that he no longer worked at RCYC.

*Id*. ¶¶ 98-99. On February 10, 2021, Martinez resigned as a result of the toxic work environment.

*Id*. ¶ 102.

As a result, the FAC asserts the following claims:

- Count I – Retaliation in violation of Title VII by Plaintiffs against RCYC;

- Count II – Retaliation in violation of the Florida Civil Rights Act ("FCRA") by Plaintiffs against RCYC;

- Count III – Retaliation in violation of 42 U.S.C. § 1981 by Plaintiffs against Defendants;

- Count IV – Disparate treatment in violation of Title VII by Douglas against RCYC;

- Count V – Disparate treatment in violation of the FCRA by Douglas against RCYC;

- Count VI – Disparate treatment in violation of 42 U.S.C. § 1981 by Douglas against Defendants;

- Count VII – Retaliatory hostile work environment in violation of Title VII by Plaintiffs against RCYC;

- Count VIII – Retaliatory hostile work environment in violation of the FCRA by Plaintiffs against RCYC;

- Count IX – Retaliatory hostile work environment in violation of 42 U.S.C. § 1981 by Plaintiffs against all Defendants;

- Count X – Retaliation in violation of the Family Medical Leave Act ("FMLA") by Martinez against RCYC and Bermudez.[1]

In the Motions, Defendants argue that the Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) and for improper joinder. Salazar, Carson, and Prothero also contend that the claims against them should be dismissed for insufficient service of process under Rule 12(b)(5) and for lack of personal jurisdiction under Rule 12(b)(2).

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing

---

[1] Fredericks was dismissed as a Defendant by stipulation. *See* ECF No. [90].

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.,* 304 F.3d 1076, 1084 (11th Cir. 2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal,* 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.,* 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Failure to State a Claim

Defendants argue that Plaintiffs fail to sufficiently allege claims for retaliation in Counts I,

II, III, VII, VIII, and IX.[2] Specifically, Defendants argue that Plaintiffs fail to allege any facts to prove that Defendants were engaged in unlawful employment practices, that Plaintiffs engaged in protected activity, or the requisite causal link. Plaintiffs respond that their claims are adequately pleaded.

### i.  Retaliation (Counts I, II, and III)

In general, an employer may not retaliate against an employee because the employee has opposed an unlawful employment practice. *EEOC v. Total Sys. Serv., Inc.,* 221 F.3d 1171, 1174 (11th Cir.2000); 42 U.S.C. § 2000e–3(a).[3] The opposition clause provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008). The plaintiff "must 'carry the initial burden under the statute of establishing a prima facie case.'" *Brush*

---

[2] In its Motion, RCYC asserts that Plaintiffs' retaliation claims involve Counts II, III, IV, and XII, and that Counts IX and X assert claims based on retaliatory hostile work environment. *See* ECF No. [31]. However, upon review of the FAC, the retaliation claims are asserted in Counts I, II, and III, and the retaliatory hostile work environment claims are asserted in Counts VII, VIII, and IX. The Court therefore assumes that RCYC's Motion is directed toward those counts and that the Motion contains scrivener's errors, especially since the FAC does not contain a Count XII. The Court notes further that Defendants are all represented by the same counsel and, to the extent Defendants' arguments are aligned, counsel might consider consolidating those arguments in the future to avoid confusion resulting from repeating the same argument in multiple separate motions.

[3] Claims under the FCRA and § 1981 are analyzed in the same manner as claims brought under Title VII. *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000); *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n.14 (11th Cir. 2011). Therefore, in this analysis, the Court applies the Title VII analytical framework.

*v. Sears Holdings Corp.,* 466 F. App'x 781, 785-86 (11th Cir.2012) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

"However, as explained in *Swierkiewicz v. Sorema*, *N.A.*, 534 U.S. 506, 511 (2002), a plaintiff need not satisfy the *McDonnell Douglas* framework at the pleading stage in order to state a discrimination or retaliation claim." *Zachary v. Comprehensive Health Mgmt., Inc.*, 2012 WL 3264899, at *2 (M.D. Fla. Aug. 9, 2012). Nevertheless, "the ordinary rules for assessing the sufficiency of the complaint [still] apply." *Swierkiewicz*, 534 U.S. at 511; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008), *abrogated on other grounds by Twombly*, 550 U.S. 544 (2007) ("Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination."). "*McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrance Found.*, 789 F3d 1239, 1246 (11th Cir. 2015). This is because "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case. . . . Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 511.

With these standards in mind, Defendants' arguments fail because Plaintiffs are not required to establish a prima facie case at this stage. Accordingly, Plaintiffs need only allege sufficient facts to state a claim that is plausible on its face. The Court therefore turns to the allegations in the FAC.

### a. Protected Activity

For purposes of a retaliation claim, engaging in a 'protected activity' involves "oppos[ing]

an unlawful employment practice which [a plaintiff] reasonably believed had occurred." *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990) (citing *Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989)). The Eleventh Circuit has emphasized that the employee's belief "has both a subjective and an objective component: . . . a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices [and] . . . that the belief, though perhaps mistaken, was objectively reasonable." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir.2008) (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997)). Critically, to successfully pursue a claim under Title VII's opposition clause, a plaintiff must communicate or disclose her opposition to her employer. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir.2009) ("[T]o engage in protected activity, the employee must still, at the very least, communicate her belief that discrimination is occurring to the employer."). Further, to constitute protected activity, a plaintiff's conduct must specifically oppose the unlawful practice at issue and must be purposive. *See Daughtry v. Family Dollar Stores, Inc.*, 634 F.Supp.2d 475, 484 (D.Del.2009) ("[W]hether an employee's 'opposing' conduct is active or passive, it must still be specific in nature."); *Thompson v. Somervell Cnty., Tex.*, 431 F. App'x 338, 341 (5th Cir.2011) (purpose of "opposition" must be to "contend against, confront, resist or withstand" some discriminatory practice).

Here, the FAC contains sufficient facts to plausibly allege that Plaintiffs engaged in protected activity. In pertinent part, Plaintiffs allege that they objected to and complained about the outbound call script, and the requirement that they try to sound more "refined," "upscale," and "ritzy," which they believed to be discriminatory. *See* ECF No. [16] ¶¶ 61-69, 72. Defendants

argue that they were entitled to implement the script out of business necessity, but the case they rely upon is both procedurally and factually distinguishable. *See Prado v. L. Luria & Son, Inc.*, 975 F. Supp. 1349, 1352 (S.D. Fla. 1997) (involving review of a motion for summary judgment in case asserting claims for discriminatory and hostile work environment, not retaliation). Defendants have not pointed to a case which would support their contention that the allegations here are insufficient to allege protected activity.

### b.  Adverse Employment Action

Defendants do not appear to challenge that Douglas and Milian experienced adverse employment actions. Indeed, the FAC alleges that Douglas and Milian were terminated on or about November 12, 2020. *See* ECF No. [16] ¶¶ 84, 92. However, Defendants contend that Martinez did not experience adverse employment actions because he resigned. In response, Plaintiffs argue that an employee need not be terminated in order to constitute adverse employment action, and that the allegations are sufficient. Upon review, the Court agrees.

"[M]istreatment based on retaliation for protected conduct—for example, making or supporting a charge of discrimination—is actionable whether or not the mistreatment rises to the level of a tangible employment action, but only if the mistreatment 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In this case, Plaintiffs allege that Martinez was removed from sales and demoted to customer service taking away his ability to earn commissions, he was removed from sales meetings, he was reprimanded for opposing the directive to change his dialect, his sales leads were given to another employee, and he was reprimanded for complaining about discrimination. ECF No. [16] ¶¶ 74, 78-79. Taken as true, these allegations meet the "well might

have dissuaded" standard, as a reasonable worker might not complain if these consequences resulted. As such, Plaintiffs sufficiently allege adverse employment actions.

### c. Causation

Defendants also argue that the FAC fails to adequately allege causation. In response, Plaintiffs contend that the allegations are sufficient because the adverse employment actions were close in time to their alleged protected activity.

To establish a causal connection between participation in a protected activity and adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quotations omitted). To make this showing, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.*; *see also McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (plaintiff must show that decisionmaker was aware of protected conduct, and that protected activity and adverse action were not wholly unrelated). Close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to establish a plausible causal connection. *See Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 950 (11th Cir. 2005) (close temporal proximity creates genuine issue of material fact as to causal connection); *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716-17 (11th Cir. 2002) ("Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated."). In addition, "[a] causal relationship might reasonably be inferred from a series of adverse actions that commenced immediately after a plaintiff engaged in protected activity." *Baroudi v. Sec'y, U.S. Dep't of Veterans Affs.*, 616 F. App'x 899, 903 (11th Cir. 2015).

Here, the FAC alleges that Plaintiffs' opposition to the script and requirement that they

sound more refined was followed in short order by the alleged series of adverse employment actions, including stripping Martinez of his sales leads and removal from the sales team, reprimanding and placement of Milian on a development action plan, reprimanding Douglas for an incident that did not occur, and ultimately, Douglas's and Milian's terminations. ECF No. [16] ¶¶ 74-93. These allegations also support the inference that Defendants were aware of Plaintiffs' opposition and that the adverse actions are not wholly unrelated to the protected activity in this case.

### ii.  Retaliatory Hostile Work Environment (Counts VII, VIII, and IX)

RCYC makes similar arguments regarding Plaintiffs' retaliatory hostile work environment claims. Plaintiffs respond that the allegations are sufficient.

> To establish a hostile work environment claim, a plaintiff must show:
>
> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Upon review, the allegations are sufficient, and RCYC's arguments fail for the same reasons the arguments made as to Plaintiffs' retaliation claims fail. That is because the Eleventh Circuit analyzes retaliatory hostile work environment claims like retaliation claims "and ask[s] whether the conduct complained of 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Debe v. State Farm Mut. Auto. Ins. Co.*, 860 F. App'x 637, 640 (11th Cir. 2021) (quoting *Monaghan*, 955 F.3d at 861)). As the Court has already determined with respect to Plaintiffs' retaliation claims, the allegations in the FAC satisfy this

standard. In addition, as with the retaliation claims, Plaintiffs are not required to satisfy the
*McDonell Douglas* burden-shifting framework at the pleading stage with respect to their retaliatory
hostile work environment claims.

### iii. Disparate Treatment (Counts IV, V, and VI)

Defendants argue that Douglas fails to adequately allege claims for discrimination based
on disparate treatment.[4] Specifically, Defendants argue that Douglas provides only conclusory
allegations regarding any discriminatory intent and fails to sufficiently allege causation. Douglas
responds that the allegations are sufficient.

According to the United States Supreme Court, "'[d]isparate treatment' . . . is the most
easily understood type of discrimination. The employer simply treats some people less favorably
than others because of their race, color, religion, sex, or national origin. Proof of discriminatory
motive is critical, although it can in some situations be inferred from the mere fact of differences
in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Liability in
such cases "depends on whether the protected trait actually motivated the employer's decision.'"
*Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v.
Hernandez*, 540 U.S. 44, 52 (2003)). "To make out a prima facie case of racial discrimination, a
plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she
was subjected to adverse employment action; and (4) her employer treated similarly situated
employees outside her class more favorably.") *Crawford*, 529 F.3d at 970 (citation omitted). A
plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy,
practice, or decision relies expressly on a protected characteristic, or (2) through circumstantial

---

[4] In the Motions, Defendants raise their arguments regarding the sufficiency of the disparate treatment
claims as to Plaintiffs collectively, despite the fact that the FAC asserts these claims on behalf of Douglas
only. The Court therefore analyzes the arguments with respect to Douglas only.

evidence using the burden-shifting framework set forth in *McDonnell Douglas*. *Young*, 135 S. Ct. at 1345. Under the *McDonnell Douglas* framework, "[a] plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (citations omitted). Although Plaintiffs are not required to establish a prima facie case at the pleading stage, these standards guide the Court's review of the sufficiency of the facts alleged.[5]

Here, Douglas alleges that she is a black woman of Jamaican national origin, and that she was treated less favorably than other non-black/Jamaican employees beginning while she was still an applicant. ECF No. [16] ¶ 32. She alleges further that despite being the only applicant to achieve a perfect score, she was required to go through two interviews, while other non-black/Jamaican employees only had to go through one. *Id*. In addition, Douglas alleges that she never received a negative performance review and was one of RCYC's top salespeople at the time she was terminated, *id*. ¶¶ 46, 187, 197, 206. Despite those facts, Defendants treated Douglas less favorably than Navarro, even though Douglas outperformed Navarro and Navarro had previously resigned for mishandling client accounts. *Id*. ¶¶ 41, 43, 89. Finally, Douglas alleges that Angela Composto, RCYC's Senior Vice President of Sales and Marketing, told her that she had been fired because she was black. *Id*. ¶¶ 66, 91. Contrary to Defendants' arguments, Douglas need not prove Defendants' discriminatory motive at the motion to dismiss stage, and those allegations are

---

[5] "[T]he elements of a prima facie case, and the analytical framework for employment discrimination claims made under Title VII, the [FCRA], and § 1981 . . . are the same." *Henderson v. Dade Cnty. Police Benevolent Ass'n, Inc.*, No. 14-20321-CIV, 2014 WL 3591600, at *6 (S.D. Fla. July 18, 2014) (citations omitted).

sufficient.

### iv.  Claims Against Individual Defendants[6]

Bermudez, Salazar, Carson, and Prothero argue that Plaintiffs' claims against each of them must be dismissed because the alleged acts of misconduct occurred during the course and scope of their employment.[7] As such, these Defendants argue that they are each protected by the corporate shield doctrine, and the allegations are insufficient to state a claim for personal liability against them. Plaintiffs respond that individuals may be liable under § 1981 (and in Bermudez's case, under the FMLA as well),[8] and that the corporate shield doctrine is not a valid defense. The Court agrees.

First, Defendants cite no authority to support their argument that acts of misconduct that occur during the course and scope of employment preclude claims for retaliation, disparate treatment, or retaliatory hostile work environment. Indeed, individuals may be held liable under section 1981. *See, e.g.*, *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1176-77 (11th Cir. 2003) (noting that Section 1981 provides for individual liability); *Wallace v. DM Customs, Inc.*, No. 8:04-cv-115-T-23TBM, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006) ("To establish a claim for individual liability under § 1981, . . . [t]he claim must be 'predicated on the actor's personal involvement.' . . . Personal involvement may be satisfied by proof that the individual had

---

[6] Salazar, Carson, and Prothero also challenge personal jurisdiction. "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). Because Plaintiffs assert that specific jurisdiction exists under Florida's long-arm statute, the Court first considers whether their claims against these Defendants are sufficiently alleged.

[7] Plaintiffs voluntarily dismissed their retaliatory hostile work environment claims asserted in Count IX against Prothero. *See* ECF No. [78].

[8] Bermudez does not directly address the FMLA claim (Count X), and therefore, the Court does not analyze it here.

knowledge of the alleged acts of discrimination and failed to remedy or prevent them.") (citations omitted); *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000) ("Contrary to Title VII, individual employees can be held liable for discrimination under § 1981.").

Second, Defendants appear to conflate the arguments for substantive dismissal of Plaintiffs' claims and whether there is personal jurisdiction in this case. Indeed, the corporate shield doctrine is not a defense to Plaintiffs' substantive claims or a basis for dismissal under Rule 12(b)(6); rather, it is an exception to the exercise of personal jurisdiction. *See Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 679 (11th Cir. 2009) (explaining that the corporate shield doctrine precludes the exercise of personal jurisdiction over out-of-state defendants under the Florida long-arm statute); *see also Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) ("The instant case, by contrast, presents the question whether long-arm jurisdiction exists over [individual defendant], not whether a cause of action exists against him.").

Third, the FAC contains sufficient allegations of each of the individual Defendants' personal involvement. The truth of those allegations, which Defendants contest, is not an inquiry the Court undertakes at the motion to dismiss stage.

**B.  Improper Joinder**

Defendants argue that Plaintiffs improperly assert their claims together in the FAC, and that Martinez's claims are wholly separate from Douglas's and Milian's claims because Martinez was not terminated. As such, Defendants argue that the FAC should be dismissed or the claims severed. Plaintiffs respond that their claims are properly joined because they arise from the same series of occurrences and share common questions of law and fact.

"The central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty. Ga.*, 207 F.3d

1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th

Cir. 2003) (citing Fed. R. Civ. P. 20.). Under Rule 20,

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief
> jointly, severally, or in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or occurrences; and (B) any
> question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20. In analyzing whether parties are properly joined under Rule 20, "the term

'transaction is a word of flexible meaning' that 'may comprehend a series of many occurrences,

depending not so much upon the immediateness of their connection as upon their logical

relationship.'" *Gonzalez v. Batsmasian*, 320 F.R.D 580, 581 (S.D. Fla. 2017) (quoting *Alexander*,

207 F.3d at 1323). Moreover, to satisfy the commonality prong for proper joinder, all that is

required is that the plaintiffs share a common question of law or fact. *Alexander*, 207 F.3d at 1324.

Several district courts have held that "'Rule 20 contemplates a much lower threshold for allowing

plaintiffs' claims to proceed to trial together than is required by Rule 23 for class certification.'"

*See, e.g.*, *Taylor v. Wells Fargo Bank, N.A.*, No. 3:16-cv-159-J-32JRK, 2017 WL 7371182, at *10

(M.D. Fla. Aug. 8, 2017) (quoting *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 542

(S.D. Ala. 2007)). Additionally, under Rule 21, the Court "may at any time, on just terms, add or

drop a party." Fed. R. Civ. P. 21. The district courts are accordingly given "broad discretion to

join parties or not and that decision will not be overturned as long as it falls within the district

court's range of choices." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2000); *see also Alhassid v.

Bank of Am., N.A.*, 60 F. Supp. 3d. 1302, 1326 (S.D. Fla. 2014).

In this case, the Court does not find that Plaintiffs' claims are improperly joined. As set

forth above, Martinez's claims are not precluded by the fact that he was not terminated. In addition,

Plaintiffs' claims arise from the same series of occurrences—namely Defendants' alleged acts

following Plaintiffs' opposition to, and resulting complaints about, the discriminatory nature of

the outbound call script. In any event, improper joinder is not a basis for dismissal. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action.").

### C. Service of Process

Salazar, Carson, and Prothero argue that service of process with respect to them was insufficient because they were purportedly served via e-mail, and not through the Hague Convention. Plaintiffs respond that service of process was sufficient because the Court permitted e-mail service. *See* ECF No. [12] ("Alternate Service Order").

On December 29, 2021, Plaintiffs filed a Motion for Alternate Service of Process, or in the Alternative a 90-Day Extension of Time to Effectuate Service, ECF No. [10]. The Court granted Plaintiff's request for leave to serve Salazar, Carson, and Prothero via e-mail, noting that Spain and Malta are signatories to the Hague Convention, that the Convention does not specifically preclude service by e-mail, and neither Spain nor Malta have specifically objected to service by e-mail.[9] *See* ECF No. [12] at 1-2. In their Replies, Salazar, Carson, and Prothero fail to acknowledge the Alternate Service Order, and the Court's Order authorizing Plaintiffs to serve them via e-mail, relying instead upon cases that are easily distinguishable. *See Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 223 (S.D.N.Y. Aug. 28, 2021) (quashing service on the foreign defendants but granting leave to serve by e-mail); *Kowalski v. Anova Food, LLC*, No. 11-00795 HG-RLP, 2012 WL 3308886, at *3 (D. Haw. Aug. 10, 2012) (declining to authorize alternate service of process). Here, the Court expressly granted leave to serve Salazar, Carson, and Prothero by e-mail, and therefore, their challenge to service of process fails.

---

[9] The parties appear to disagree as to where Salazar and Prothero are in fact located, since Plaintiffs allege that Salazar and Prothero are located in Spain, ECF No. [16] ¶¶ 10, 13, yet Salazar and Prothero assert that they are citizens and residents of Malta. ECF Nos. [52] at 5, [54] at 5. This disagreement, however, does not affect the analysis concerning the validity of service of process.

### D.  Personal Jurisdiction

Salazar, Carson, and Prothero also argue that the Court cannot exercise personal jurisdiction over them. Specifically, they argue that Plaintiffs fail to allege sufficient facts to establish a prima facie case of jurisdiction over them as non-residents, and that even if the allegations were sufficient, the exercise of jurisdiction in this case would violate Due Process requirements. Plaintiffs respond that these Defendants are subject to specific personal jurisdiction under the Florida long-arm statute for committing a tortious act and` the exercise of personal jurisdiction comports with due process requirements.

A court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Id*. Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. *See* Fla. Stat. §§ 48.193(1)-(2); *see also easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695, at *6 (S.D. Fla. Sept. 11, 2020). The Eleventh Circuit has held that the reach of Florida's long-arm statute is a question of state law, and that federal courts must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). If the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific jurisdiction, then the court must also consider the federal Due Process Clause. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'"

*Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). In addressing whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id*.

Defendants fail to attach affidavits or other evidence for the Court's consideration, arguing that the allegations in the FAC fail to state a prima facie case for personal jurisdiction. As such, the Court focuses on the allegations in the FAC.

### i.  Florida's Long-Arm Statute

Plaintiffs argue that they have sufficiently alleged a prima facie case for specific jurisdiction under Florida's long-arm statute, arising from Salazar, Carson, and Prothero's tortious acts.[10] A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 n. 3 (11th

---

[10] Plaintiffs do not argue that the Court may exercise general jurisdiction over Salazar, Carson, and Prothero, and there are no allegations in the FAC that would support such an exercise.

Cir.2006) (citing *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir.2000)).

Florida Statutes section 48.193 states in relevant part that:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . .
>
> 2. Committing a tortious act within this state[.]

Fla. Stat. § 48.193(1)(a)(2). Under § 48.193(1)(a)(2), a defendant commits a tortious act within Florida when that act causes injury in Florida. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (holding that the Eleventh Circuit's "firmly established precedent . . . interprets subsection [48.193(1)(a)(2)] to apply to defendants committing tortious acts outside the state that cause injury in Florida").

The parties in this case do not address whether the retaliation, disparate treatment, or retaliatory hostile work environment alleged would constitute tortious acts for purposes of the long-arm statute. Rather, Plaintiffs contend that a non-resident's telephonic, electronic, or written communications into Florida satisfies this prong of the long-arm statute, relying on *Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002). In *Wendt*, the Florida Supreme Court determined that "'committing a tortious act' in Florida . . . can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications." 822 So. 2d at 1260; *see also Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1121 (N.D. Fla. 2007) ("[s]pecific jurisdiction will not attach, however, if the cause of action does not arise from the communications themselves." (citing *Wendt*, 822 So. 2d at 1260)). As explained in *Wendt*, "[t]his predicate finding is necessary because of the connexity

requirement contained in section 48.193(1)."[11] 822 So. 2d at 1260.

Upon a review of the allegations, the connexity requirement is not met. While Plaintiffs allege a host of statements made by Salazar, Carson, and Prothero to Plaintiffs in Florida, their claims do not arise from those communications. Indeed, Plaintiffs themselves recognize that their claims arise from "employment decisions" or "employment actions" taken by Defendants, *see* ECF Nos. [58] at 13; [71] at 11; [76] at 12. Notably, Plaintiffs do not allege that the communications themselves were tortious, nor can their claims reasonably be interpreted to arise from Defendants' communications themselves. Therefore, interpreting the long-arm statute in the manner Plaintiffs urge is not warranted.

For example, in *Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003), the court determined that the connexity requirement was not met where there was no allegation or showing that the subject communications themselves were tortious, or that the causes of action arose out of those communications. In reaching its conclusion, the court noted that in *Wendt*, and the cases upon which *Wendt* relied,

> a nonresident defendant was alleged to have made telephonic or written communications into Florida which were in and of themselves tortious; *viz.*, the communications were either defamatory statements or negligent legal advice to a client. In each, the cause of action which was alleged arose out of the communication, that is, the communication itself was alleged to be tortious. . . . None of the alleged causes of action [abuse of process, slander of title, and tortious interference] would depend upon proof of either the existence or the content of any of the communications . . . into Florida[.]

*Carlyle*, 842 So. 2d at 1017. *Cf. Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (finding sufficient basis for specific jurisdiction under long-arm statute's tortious act prong, where communications were allegedly fraudulent).

---

[11] Florida's long-arm statute states that a person submits "to jurisdiction of the courts of this state for any cause of action *arising from* any of the" specifically enumerated acts, including committing a tortious act within Florida. Fla. Stat. § 48.193(1)(a).

In this case, the same reasoning applies. Plaintiffs' claims arise out of allegedly retaliatory actions resulting from their objections to an outbound call script they believe to be discriminatory, not the communications Defendants made. As such, the causes of action alleged—retaliation, disparate treatment, and retaliatory hostile work environment—do not depend upon proof of the existence or content of the communications; but rather, on proof of the alleged actions taken by Defendants following Plaintiffs' complaints. There is simply too great a disconnect between Salazar, Carson, and Prothero's alleged communications into the state and the asserted causes of action to fall within the bounds of the long-arm statute. Indeed, "[a] contrary conclusion would allow courts to exercise jurisdiction over virtually any foreign defendant as long as some communication into the state transpired, regardless of the causes of action asserted." *Millennium Indus. Network, Inc. v. Hitti*, No. 11-62570-CIV, 2014 WL 324656, at *3 (S.D. Fla. Jan. 28, 2014). The Court has found no authority to support such an outcome.

As a result, the FAC fails to satisfy the requirements of the long-arm statute and fails to state a prima facie case of personal jurisdiction with respect to Salazar, Carson, and Prothero.[12]

### E.  Leave to Amend

Federal Rule of Civil Procedure 15 governs amended pleadings generally and provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the rule in the Eleventh Circuit is that "[a] district court is not required to grant

---

[12] Plaintiffs point out that although the FAC alleges that Salazar resides in Spain, he in fact resided in Florida while Plaintiffs were employed with RCYC. However, the FAC contains no such allegation, and it is well-settled that "[P]laintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *see also Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). "Filing a motion is the proper method to request leave to amend a complaint," and the motion "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999); *see also* S.D. Fla. L.R. 15.1 ("A party who moves to amend a pleading shall attach the original of the amendment to the motion[.]"). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quotation omitted).

Here, Plaintiffs have already amended once as a matter of course, and have not properly requested leave to amend again, as Plaintiffs' request is simply included in the conclusion of their responses to the Motions. Plaintiffs fail to point to any additional facts or allegations that would otherwise place Defendants Salazar, Carson, or Prothero within the ambit of Florida's long-arm statute, such that the exercise of personal jurisdiction would be proper in this case. Accordingly, leave to amend is not warranted. *See Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (determining that leave to amend properly denied, where request to amend included in conclusion of opposition memorandum, and plaintiff failed to set forth facts to establish that amendment would not be futile).

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. RCYC's and Bermudez's Motions, **ECF Nos. [31] and [50]**, are **DENIED**.

2. Salazar's, Carson's, and Prothero's Motions, **ECF Nos. [52], [53], and [54]**, are

Case No. 21-cv-23980-BLOOM/Otazo-Reyes

**GRANTED IN PART AND DENIED IN PART**. The FAC is dismissed without prejudice as to Salazar, Carson, and Prothero for lack of personal jurisdiction.

3.  RCYC and Bermudez shall file their Answers to the FAC, **no later than June 6, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 26, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record